Slip Op. 17-84

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TENSION STEEL INDUSTRIES CO., LTD., | |
| Plaintiff, | |
| v. | Before: Leo M. Gordon, Judge |
| UNITED STATES, | Consol. Court No. 14-00218 |
| Defendant. | |

**OPINION**

[Remand results sustained.]

Dated: July 12, 2017

    <u>Kelly A. Slater</u>, <u>Jay Y. Nee</u>, and <u>Edmund W. Sim</u>, Appleton Luff Pte Ltd. of Washington, DC for Plaintiff Tension Steel Industries Co., Ltd.

    <u>L. Misha Preheim</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC for Defendant United States. On the brief with him were <u>Chad A. Readler</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Claudia Burke</u>, Assistant Director. Of counsel on the brief was <u>Mercedes C. Morno</u>, Attorney, Office of the Chief Counsel for Enforcement and Compliance, U.S. Department of Commerce of Washington, DC.

    <u>Robert E. DeFrancesco, III</u> and <u>Alan H. Price</u>, Wiley Rein, LLP of Washington, DC for Defendant-Intervenor Maverick Tube Corporation.

    <u>Jeffrey D. Gerrish</u> and <u>Jamieson L. Greer</u>, Skadden, Arps, Slate, Meagher & Flom LLP of Washington, DC for Defendant-Intervenor United States Steel Corporation.

    <u>Roger B. Schagrin</u>, <u>John W. Bohn</u>, and <u>Paul W. Jameson</u>, Schagrin Associates of Washington, DC for Defendant-Intervenors Boomerang Tube LLC, Energex Tube (a Division of JMC Steel Group), Tejas Tublar Products, TMK IPSCO, Vallourec Star, L.P., and Welded Tube USA Inc.

Gordon, Judge: This action involves the U.S. Department of Commerce's ("Commerce") final determination in the less than fair value investigation of certain oil country tubular goods from Taiwan. See Certain Oil Country Tubular Goods from Taiwan, 79 Fed. Reg. 41,979 (Dep't of Commerce July 18, 2014) (final LTFV determ.), as amended, 79 Fed. Reg. 46,403 (Dep't of Commerce Aug. 8, 2014) ("Final Determination"), and accompanying Issues and Decisions Memorandum for the Final Determination of the Antidumping Duty Investigation of Certain Oil Country Tubular Goods from Taiwan, A-583-850 (Dep't of Commerce July 10, 2014), available at http://enforcement.trade.gov/frn/summary/taiwan/2014-16861-1.pdf (last visited this date) ("Decision Memorandum"); Antidumping Duty Investigation of Certain Oil Country Tubular Goods from Taiwan: Proprietary Issues (Dep't of Commerce July 10, 2014), CD 388 ("Confidential Decision Memorandum").[1]

Before the court are the Results of Remand Determination, ECF No. 87-1 ("Remand Results"), filed by Commerce pursuant to the court's remand order in Tension Steel Indus. Co. v. United States, 40 CIT ___, 179 F. Supp. 3d 1185 (2016) ("Tension Steel I"). The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[2] and 28 U.S.C. § 1581(c) (2012). For the reasons set forth below, the court sustains the Remand Results.

---

[1] "CD" refers to a document contained in the confidential administrative record.
[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

Consol. Court No. 14-00218                                                                                      Page 3

## I. Standard of Review

For administrative reviews of antidumping duty orders, the court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2017). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances

Consol. Court No. 14-00218 Page 4

presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2017).

## II. Discussion

In the <u>Final Determination</u>, Commerce rejected adjustments for rebate payments made by the respondent, Tension Steel Industries Co., Ltd. ("Respondent" or "Tension"), pursuant to sales contracts that did not specifically include a rebate clause. <u>Decision Memorandum</u> at 11. According to Commerce, the only "legitimate rebates" proffered by Tension were those known by customers at or before the time of the sale. <u>Id.</u> Tension persuaded the court that Commerce's practice of rejecting rebates when Commerce is not satisfied that customers were aware of the terms and conditions of the rebate at the time of the sale violated <u>Papierfabrik August Koehler AG v. United States</u>, 38 CIT ___, 971 F. Supp. 2d 1246 (2014) ("<u>Papierfabrik</u>"), which held that Commerce's practice contravened the plain language of Commerce's regulations. <u>Tension Steel I</u>, 40 CIT at ___, 179 F. Supp. 3d at 1190-91. The court noted that <u>Papierfabrik</u> explained that "the plain language of Commerce's regulations require [Commerce] to calculate normal value 'net of <u>any</u> price adjustment . . . that is reasonably attributable to the . . . foreign like product' that '[is] reflected in the purchaser's net outlay.'" <u>Tension Steel I</u>, 40 CIT at ___, 179 F. Supp. 3d at 1190 (quoting <u>Papierfabrik</u>, 38 CIT at ___, 971 F. Supp. 2d at 1252-53 (quoting 19 C.F.R. §§ 351.102(b)(38), 351.401(c))). The court also observed that <u>Papierfabrik</u> had become final, and instead of filing an appeal, Commerce chose to amend the applicable regulation. Accordingly, the court remanded this issue to

Commerce to grant all of Tension's rebate adjustments. Tension Steel I, 40 CIT at ___, 179 F. Supp. 3d at 1191.

On remand, Commerce granted all of Respondent's reported rebates and recalculated Tension's antidumping duty margin.[3] Remand Results at 3. The petitioners, Maverick Tube Corporation ("Maverick"), United States Steel Corporation, and Boomerang Tube LLC (collectively "Petitioners"), argued that Papierfabrik is an outlier and that the then-existing regulations permitted Commerce to deny Tension's claimed adjustments for rebates that were not contemplated at the time of sale. Id. Though it "did not disagree" with Petitioners' arguments, Commerce determined that it would comply with the court's remand in Tension Steel I. Id. at 4.

Maverick now challenges Commerce's determination to comply with the court's remand and grant all of Tension's reported rebate adjustments. In particular, Maverick argues that in Tension Steel I the court inappropriately relied upon Papierfabrik, "as [Papierfabrik] is an outlier, reflecting an unreasonable standard that is contrary to established Commerce practice as well as the spirit of the antidumping duty laws." Maverick's Comments on Remand Results at 3, ECF No. 93 ("Maverick's Br."). Maverick also contends that Commerce did not explain how its decision is supported by the record. Id. at 6.

Maverick's challenge to Papierfabrik is a continuation of the arguments raised by the Government and adopted by Maverick in the initial USCIT Rule 56.2 briefs on the

---

[3] The recalculated weighted-average margin for Tension was zero percent.

merits in this action. See Def.'s Opposition to Pls.' R. 56.2 Mot. for J. upon Agency Record at 33-36, ECF No. 62; Maverick Tube Corp.'s Response to Tension's Mem. in Support of its R. 56.2 Mot. for J. on the Agency Record at 2, ECF No. 65 (agreeing, supporting, and incorporating by reference Defendant's arguments (pages 25-36 of Defendant's brief) on Commerce's denial of certain rebate adjustments sought by Tension). Maverick again argues that Papierfabrik is "an outlier" from prior court decisions. See Maverick's Br. 4 (citing Koenig & Bauer Albert AG v. United States, 22 CIT 574, 15 F. Supp. 2d 834 (1998); Nachi-Fujikoshi Corp. v. United States, 19 CIT 914, 890 F. Supp. 1106 (1995); Dupont Teijin Films USA, LP v. United States, 28 CIT 896 (2004); and Mitsubishi Electric Corp. v. United States, 12 CIT 1025, 700 F. Supp. 538 (1988)). Specifically, Maverick contends that these decisions demonstrate that Commerce maintains broad discretion to require a respondent to prove the existence of claimed rebates and to reject any claimed price adjustments that are intended to evade or circumvent the antidumping duty law. Id.

  The court disagrees that these cases support Maverick's argument. As noted in Papierfabrik, Koenig and Nachi-Fujikoshi are inapplicable as they arose from administrative determinations made prior to the implementation of the regulations applicable in this action. See Papierfabrik 38 CIT at ___, 971 F. Supp. 2d at 1256. Furthermore, Maverick's reliance on these four decisions is misplaced because Maverick does not contend, nor does the administrative record demonstrate, that any of Tension's claimed rebates are either illusory or pose the risk of manipulation. See Koenig, 22 CIT at 576, 15 F. Supp 2d at 840 (upholding Commerce's authority "to reject price amendments that present the potential for price manipulation"); Nachi-Fujikoshi, 19 CIT

at 920, 890 F. Supp at 1110 (sustaining Commerce's disallowance of claimed rebate given respondent's failure to adequately provide record information supporting the rebate claim); Dupont, 28 CIT at 904 (noting Commerce's authority to interpret the statutory price adjustment provisions in a manner that accounts for the risk of manipulation); Mitsubishi, 12 CIT at 1046, 700 F. Supp. at 555 (upholding Commerce's authority to act with "the purpose in mind of preventing the intentional evasion or circumvention of the antidumping duty law."). Commerce has made no finding that Respondent's claimed rebates were illusory, posed the risk of manipulation, or were otherwise aimed at the evasion or circumvention of the antidumping duty law. To the contrary, as the court has already noted, "Commerce was able to verify all of Tension's proposed rebate amounts while on-site in Taiwan." Tension Steel I, 40 CIT at ___, 179 F. Supp. 3d at 1197 (citing Confidential Decision Memorandum at 10-11).

Maverick's preferred arguments regarding Commerce's practice of rejecting certain claimed rebate adjustments under the prior version of the applicable regulations were considered and rejected in Papierfabrik. In challenging the Remand Results, Maverick is essentially asking the court to reconsider its decision in Tension Steel I. The court will not do this and continues to follow Papierfabrik.

Turning to whether Commerce failed to explain how the record supports its Remand Results, the court concludes that Maverick's argument lacks merit. In its remand order, the court examined and considered Papierfabrik in detail. This action presents the same scenario as in Papierfabrik, namely that Commerce found sufficiently documented rebates but rejected those rebates whose terms were not known to the buyer at the time

of purchase. Here the court concluded that the same result as in Papierfabrik was appropriate—an order to grant all the rebates properly claimed by the Respondent. Tension Steel I, 40 CIT ___, 179 F. Supp. 3d at 1191. In its Remand Results, Commerce acknowledged Maverick's continued challenge to Paperfabrik while explaining that it was following the court's order. Remand Results at 4. Given the administrative record, Commerce's decision to obey that order and grant all proposed rebates is reasonable and must be sustained. Maverick's re-reiteration of its dissatisfaction with Papierfabrik has once again failed to persuade the court otherwise.

### III.  Conclusion

For the reasons set forth above, Commerce's Remand Results are sustained. Judgment will be entered accordingly.

        /s/ Leo M. Gordon
        Judge Leo M. Gordon

Dated: July 12, 2017
      New York, New York